# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2566 | DATE | 5/17/2001 |
| CASE TITLE | RANGEL vs. GENERAL MOTORS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (110-1) for reconsideration is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 21 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 114 |
| | Mail AO 450 form. | CO-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 MAY 18 PM 4:03 | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | |
| GENERAL MOTORS<br>TYPE III DOOR LATCH LITIGATION | No. 98 C 5836<br>No. 99 C 2566 |
| THOMAS J. HAENISCH, | MDL Docket No. 1266 |
| Plaintiff, | Judge James B. Zagel |
| v. | |
| GENERAL MOTORS CORPORATION, | DOCKETED |
| Defendant. | MAY 2 1 2001 |

## MEMORANDUM OPINION AND ORDER

In my order of January 31, 2001, I granted GM's motion for summary judgment on the damages issue, finding that plaintiffs had not demonstrated that they were injured in any way by GM's allegedly defective door latches. Plaintiffs in *Haenisch* and *Rangel* now seek reconsideration. For the following reasons, plaintiffs' motions are denied.

    *A.*    *Haenisch v. GM*

To avoid the impact of my ruling, Haenisch attempts to recast his purported injury as a "difference in value" or a "benefit of the bargain" injury. He says that each purchaser of a car with a Type III door latch was injured to the tune of $3.09–the cost of a replacement latch.

I do not quarrel with the availability of benefit of the bargain damages under Illinois law. See, e.g. *Munjal v. Baird & Warner, Inc.*, 485 N.E.2d 855 (Ill. App. Ct. 1985) (defrauded purchaser of house with flooding basement and leaking roof may recover under benefit of

1

bargain damages theory); *Posner v. Davis*, 395 N.E.2d 133 (Ill. App. Ct. 1979) (same). But none of plaintiffs' cases deal with the special circumstances at issue in this case in which alleged defects that have not manifested themselves are said to have caused injury. Illinois courts have confronted "no-injury" fraudulent omission questions in other cases such as *Kelly v. Sears Roebuck and Co.*, 720 N.E.2d 683 (Ill. App. Ct. 1999) which are discussed in my prior ruling. Plaintiffs still have not produced a single case in which a "difference in value" injury is sufficient to withstand a motion for summary judgment in the absence of any manifested defect, physical, or economic injury.

At this late stage, it is no longer sufficient for plaintiff to allege that a small number of latches may inadvertently open due to bypass failure; the cost of a replacement latch is $3.09; ergo, all putative class members are injured in the amount of $3.09. Plaintiffs adequately pled the cost of replacement on the motion to dismiss; but they failed to demonstrate the need for replacement on summary judgment.

B. *Rangel v. GM*

Plaintiffs in the *Rangel* case ask me to reconsider on the ground that there has been a significant change in the law. The day after I issued my opinion, the Fifth Circuit reversed *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 775 (S.D. Tex. 1999), one case upon which I relied in my previous order. See *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001). I find that Judge Jones' opinion in *Coghlan* is entirely consistent with the approach I have taken and so see no need to reconsider my prior ruling.

In *Coghlan*, plaintiffs' purchase of defendant's boat was motivated by defendant's marketing campaign which assured customers that its boats were made entirely of fiberglass.

Some months later, plaintiffs discovered that the boat they purchased was actually a hybrid wood-fiberglass boat. There was evidence in the record sufficient to support a finding that all-fiberglass boats were more durable and more rot-resistant than wood-fiberglass hybrids, and that there was a general belief among mariners that they held their value better. On these facts, Judge Jones reversed as "premature" a *sua sponte* dismissal on the pleadings for failure to properly allege damages. In doing so, Judge Jones distinguished between a "'no-injury' product liability suit" and the type of suit at issue in *Coghlan*, in which plaintiffs "were promised one thing but were given a different, less valuable thing" so that "they did not receive the benefit of their bargain." 240 F.3d at 455 n.4.

What is the difference, plaintiffs ask, between a boat which has not yet begun to rot and a car door latch which has never malfunctioned? On the facts of this case I think there is a significant difference.

First, given time, a wooden boat *will* rot, whereas a fiberglass boat will not. By contrast, Type III door latches *may* cause injury in a small number of cases, *if* a driver is involved in an accident, and *if* the force of the accident hits the door latch in a certain manner causing bypass failure. Even accepting plaintiffs' allegations as true, the latches fail in such a small number of vehicles that plaintiffs, like the vast majority of owners of cars with Type III latches, will probably never be affected by the alleged defect in any way.

Second, in *Coghlan*, there was evidence that boat-knowledgeable persons knew about the difference in value between pure fiberglass boats and wood-fiberglass hybrid boats, and that it mattered to them in terms of resale value. Here, there has been no evidence whatsoever of diminished resale value, despite over two years of discovery.

3

Third, defendants in *Coghlan* were deceiving consumers about an aspect of the product that unequivocally affected the durability and therefore the future value of the product. Moreover, the feature in question was one that plaintiffs specifically relied upon when they purchased the product. In short, Judge Jones found that plaintiffs stated an injury on the particular facts of *Coghlan*, a case in which plaintiffs (1) specifically bargained for a particular feature of the boat, (2) paid for the feature, and (3) did not receive the feature.

Plaintiffs attempt to convince me that Judge Jones expressed approbation for all no-injury product defect lawsuits, so long as the suits are based on principles of contract law rather than tort law. I do not believe that Judge Jones' criticism of the "no-injury approach to product litigation" was limited to tort cases. After all, she cited *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) for the proposition that "the no injury approach to product litigation has been rejected in several recent decisions." 240 F.3d at 455 n.4. In *Briehl,* contract as well as tort claims were dismissed on the ground that plaintiffs' as-yet un-manifested brake defect caused no injuries.

Plaintiffs further argue that failure to allow economic damages in contract-based cases would allow consumers no remedy for the substitution of inferior or defective products for those of the quality bargained for if the defect does not manifest itself. That is something of an overstatement which ignores the particular weaknesses of this case. Again, I reiterate that I am not advocating a blanket rule which says that only a plaintiff with a product which has malfunctioned can ever be said to have sustained a legal injury. But if no palpable injury has occurred, there must at least be some showing that either: (1) the injury is imminent or at least quite likely to occur; (2) there is evidence of diminished value; or (3) there has been a specific

4

misrepresentation about the value or quality of the product. Here, the link between the alleged defect and the purported injury is just too tenuous to survive a motion for summary judgment.

The motions for reconsideration in both the *Haenisch* case [77] and the *Rangel* case [110] are denied.

ENTER:

James B. Zagel
United States District Judge

DATE: MAY 1 7 2001